GREGORY BLACKSHIRE *et al.*, Plaintiffs-Appellees, v. NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), INC., *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—95—1345

Opinion filed November 21, 1996.

James D. Montgomery & Associates (James D. Montgomery, of counsel), and Mayer, Brown & Platt (Timothy S. Bishop and Jeffrey W. Sarles, of counsel), both of Chicago, and Dennis Courtland Hayes, of NAACP, Inc., of Baltimore, Maryland, for appellants.

Cook & Revak, Ltd., of Chicago (Rufus Cook and Barbara Revak, of counsel), for appellees.

JUSTICE O'BRIEN delivered the opinion of the court:

Defendant, the National Association for the Advancement of Colored People (the NAACP), appeals from the trial court's order enjoining it from denying certain youth members the right to vote in the election of officers to its southside branch. We granted a stay of the injunction pending appeal. We reverse the trial court and dissolve the injunction.

The relevant facts of this case are undisputed. The NAACP is an incorporated voluntary association that was founded to advance the political, educational, social and economic equality of minority group citizens. The senior branches are the local group organizations for adult members of the NAACP. The NAACP has more than 1,600 senior branches, including the defendant southside branch. The NAACP also has about 650 youth councils, which provide opportunities for younger members to participate in the organization.

The branches operate pursuant to the constitution and bylaws for branches (hereinafter branch constitution). Article VII of the branch constitution provides for various kinds of memberships and sets the membership fee schedules. The "basic adult" membership fee for persons over 21 years of age is $10, or $15 if the member subscribes to "Crisis," the NAACP's nationally circulated magazine.

Article VII also sets at $3 the "minimum youth membership without Crisis" for persons who have not reached their twenty-first birthday.

Article V, section 12, of the branch constitution states that "[t]he minimum voting age for any member in good standing in branch elections shall be 17 years. Where there is an active youth council (25 members or more) members 17-20 years of age can vote in the youth council or the branch." A "member in good standing" is defined in article V, section 11, as "a bona fide member of the branch at least thirty (30) days prior to the date the election is held *** who has paid the requisite minimum membership fee to the branch."

The southside branch scheduled officer elections on November 19, 1994. In accordance with the constitutional provisions outlined above, only branch members who had paid the requisite minimum membership fee as of October 19, 1994, would be eligible to vote. On October 19, 1994, Earl King, a candidate for branch president, arrived at the southside branch's office and submitted approximately 3,000 youth membership applications, each with a $3 youth membership fee.

On October 22, 1994, William Penn, Sr., the NAACP's director of branch and field operations, faxed a memorandum dated October 21, 1994, to all branches. The memorandum stated that on October 15, 1994, the NAACP's national board of directors interpreted article V, section 12, of the branch constitution as requiring youths to pay the *$10 adult membership fee* no later than 30 days prior to a branch election in order to participate in that election. As a result, the 3,000 youth members recruited by Earl King could not vote in the November 19, 1994, southside branch election because each of them had paid only the $3 youth membership fee by October 19, 1994.

On November 18, 1994, King and several youth members (plaintiffs) who had paid the $3 youth membership fee by October 19, 1994, filed suit seeking to enjoin the NAACP from denying them the right to vote in the November 19, 1994, southside branch election. Plaintiffs contended that the NAACP's denying them the right to vote constituted a violation of the branch constitution. On November 18, 1994, the trial court granted plaintiffs a temporary restraining order, staying the election pending disposition of their complaint.

On March 15, 1995, the trial court ruled that the branch constitution "clearly" allowed youth members who paid the $3 dues by October 19, 1994, to vote in the November 19, 1994, election. The court entered an order permanently enjoining the NAACP and the southside branch from denying those youth members "their right to vote in the election of officers for the southside branch which was originally scheduled for November 19, 1994."

On March 21, 1995, the trial court rescheduled the election to

April 29, 1995, and added to the list of eligible voters all the youth members who had paid the $3 youth membership fee as of October 19, 1994. On April 28, 1995, we granted a stay of the injunction pending appeal.

On appeal, the NAACP argues the trial court erred by "interfering" in its internal affairs and enjoining it from denying the youth members who had paid the $3 youth membership fee as of October 19, 1994, the right to vote in the November 19, 1994, election. We agree.

■ Our supreme court long ago held that "[i]n churches, lodges, labor, unions, and other like voluntary associations, each person on becoming a member, either by express stipulation or by implication, agrees to abide by all rules and regulations adopted by the organization. [Citation.] Courts will not interfere to control the enforcement of by-laws of such associations, but they will be left free to enforce their own rules and regulations by such means and with such penalties as they may see proper to adopt for their government." *Engel v. Walsh*, 258 Ill. 98, 103 (1913). *Engel* continues to be good law.

More recently, in *Proulx v. Illinois High School Ass'n*, 125 Ill. App. 3d 781, 787 (1984), we quoted with approval the following from 4 Am. Jur. *Associations & Clubs* § 17, at 466 (1936):

> " ' "It is well established that courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud or lack of jurisdiction. Accordingly, it is held that mandamus will not lie to regulate the affairs of unincorporated societies or associations, at least not in the absence of a permissive statute. Nor will an injunction be granted where the association is proceeding in accordance with its rules and within the scope of its jurisdiction. The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion or arbitrariness, be accepted by the courts as conclusive. Moreover, it is held that the courts will not undertake to inquire into the regularity of the procedure adopted and pursued by such tribunals in reaching their conclusions." ' " *Proulx*, 125 Ill. App. 3d at 787-88, quoting *Robinson v. Illinois High School Ass'n*, 45 Ill. App. 2d 277, 284 quoting 4 Am. Jur. *Associations & Clubs* § 17, at 466 (1936).

Here, the NAACP's national and branch constitutions give the NAACP board of directors the authority to interpret said constitutions. On October 22, 1994, the branches were notified that the board had interpreted article V, section 12, of the branch constitution as requiring youths to pay the $10 adult membership fee no later than 30 days prior to a branch election in order to participate in that election. The board's interpretation meant that the youth members

(plaintiffs) recruited by King could not vote in the November 19, 1994, southside branch election because each of them had paid only the $3 youth membership fee by October 19, 1994. Although we might have come to a different result, we must defer to the board's interpretation of its own constitution.

Plaintiffs argue, though, that their right to participate in the southside branch election is a civil right and, therefore, the general rule against judicial intrusion into the internal affairs of a voluntary association does not apply. See *Ginossi v. Samatos*, 3 Ill. App. 2d 514, 525 (1954) ("*In the absence of violations of civil or property rights*, the association will be left free to enforce its own rules and regulations as it sees fit"). (Emphasis added.)

■ ■ Plaintiffs confuse "civil rights" with "political rights." Civil rights are those rights accorded to every member of a distinct community or nation and which have *no* relation to the establishment, support, or management of government. *Payne v. Emmerson*, 290 Ill. 490, 494 (1919); Black's Law Dictionary 1324 (6th ed. 1990). Political rights are the rights to participate, directly or indirectly, in the establishment or administration of government. See *Payne*, 290 Ill. at 494; Black's Law Dictionary 1325 (6th ed. 1990). Plaintiffs' right to participate in the southside branch election is a political right incident to membership in the NAACP, not a civil right. Accord *State ex rel. Givens v. Superior Court*, 117 N.E.2d 553, 556 (Ind. 1954) ("[t]he right to participate in the establishment and management of the government of [a voluntary association] through voting for its officers and the privilege of becoming a candidate for an office therein is a political right incident to the privilege of membership. It involves no property right and since it stems wholly from the constitution of the union and not by virtue of citizenship, it is not a civil right").

Plaintiffs also cite *Van Daele v. Vinci*, 51 Ill. 2d 389, 394 (1972), in support of their argument that the general rule against judicial intrusion into the internal affairs of a voluntary association does not apply here. In *Vinci*, the Certified Grocers of Illinois, Inc. (hereinafter Certified), a private, voluntary organization of independent retail grocers whose purpose is to secure lower prices through large volume purchasing, adopted resolutions expelling plaintiffs from membership in Certified. *Vinci*, 51 Ill. 2d at 390. On appeal to our supreme court, plaintiffs argued that the expulsion proceedings violated due process of law. The supreme court held that "[a]lthough the courts in this State have traditionally been reluctant to interfere in the internal operations of associations, [the] strong possibility that an important economic interest of the plaintiffs was affected by an improper administrative proceeding gives the court power and the duty to act."

*Vinci*, 51 Ill. 2d at 394. The court further held " 'that a private organization, particularly if tinged with public stature or purpose, may not expel or discipline a member adversely affecting substantial property, contract or other economic rights, except as a result of fair proceedings which may be provided for in organization by-laws, carried forward in an atmosphere of good faith and fair play.' " *Vinci*, 51 Ill. 2d at 395, quoting *McCune v. Wilson*, 237 So. 2d 169, 173 (Fla. 1970). The court found that plaintiffs were denied due process of law, and it affirmed the circuit court's order enjoining Certified from enforcing the expulsion resolutions. *Vinci*, 51 Ill. 2d at 395.

*Vinci* is not applicable here, as plaintiffs were not expelled from the NAACP, nor were their economic interests affected by the NAACP's refusal to allow them to vote in the southside branch election.

For the foregoing reasons, we reverse the trial court and dissolve the injunction.

Judgment reversed; injunction dissolved.

CAHILL and THEIS, JJ., concur.