# United States Court of Appeals
## For the First Circuit

No. 08-1311

MARTEX FARMS, S.E.,

Petitioner,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent.

ON PETITION FOR REVIEW OF A FINAL ORDER OF THE

UNITED STATES ENVIRONMENTAL APPEALS BOARD

Before

Torruella and Stahl, <u>Circuit Judges</u>,
and García-Gregory,[*] <u>District Judge</u>.

<u>Romano A. Zampierollo-Rheinfeldt</u> for petitioner.
  <u>Angeline Purdy</u>, Environmental Defense Section, with whom <u>Ronald J. Tenpas</u>, Assistant Attorney General, <u>John C. Cruden</u>, Deputy Assistant Attorney General, <u>Danielle Fidler</u>, Office of Enforcement and Compliance Assurance, and <u>Angela Huskey</u>, Office of General Counsel, were on brief for respondent.

March 5, 2009

---

[*]Of the District of Puerto Rico, sitting by designation.

**STAHL**, <u>Circuit Judge</u>. Appellant Martex Farms, S.E. appeals a final decision and order of the Environmental Appeals Board ("the Board"), which held Martex liable for numerous violations of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 et seq. Having carefully reviewed the record, we affirm the Board's decision in full, as to both liability and penalty.

## I.  Background

Martex is one of the largest commercial farms in Puerto Rico, employing three to four hundred agricultural workers and generating a gross annual income of over $10 Million. The Martex operation consists of five farms growing fruit, vegetables, and ornamental plants. Because Martex uses pesticides as part of its agricultural methods, it is subject to the Worker Protection Standard (WPS), 40 C.F.R. pt. 170, which is enforced by the Environmental Protection Agency (EPA). The WPS is intended to reduce the risk of illness and injury to workers[1] and handlers[2] who are exposed to pesticides during the course of employment. <u>See</u> 40 C.F.R. § 170.1. Any failure to comply with the WPS when using a pesticide is a violation of FIFRA. <u>See</u> 40 C.F.R. § 170.9(a).

---

[1] A "worker" is defined by the regulations as "any person . . . who is performing activities relating to the production of agricultural plants." 40 C.F.R. § 170.3.

[2] A "handler" is defined by the regulations as "any person . . . [w]ho is . . . [m]ixing, loading, transferring or applying pesticides." 40 C.F.R. § 170.3.

In 2003, the Puerto Rico Department of Agriculture and the EPA initiated a series of inspections of Martex's operations. Based on those inspections, on January 28, 2005, the EPA filed an administrative complaint against Martex. The EPA's Second Amended Complaint alleged 336 violations of FIFRA by Martex. The EPA accused Martex of failing to meet several rather commonsense and straightforward WPS requirements, including (1) displaying information for workers and handlers regarding pesticide application; (2) providing decontamination supplies for workers and handlers in easily accessible locations; and (3) providing handlers with personal protective equipment.[3] As to the posting requirement, the regulations require the employer to post information about pesticide applications made within the last 30 days, at a central, accessible location. See 40 C.F.R. § 170.122(a). As to the decontamination supplies, employers must provide workers with soap, single-use towels, and water for washing and emergency eye flushing. These supplies must be located together, within 1/4 mile of each work site. See 40 C.F.R. § 170.150(c). In addition, pesticide handlers must also be provided with sufficient water for whole-body washing and access to a clean change of clothes in case of emergency. See 40 C.F.R. § 170.250(b).

---

[3]This third category of violations is not at issue on appeal.

An administrative law judge issued a Partial Accelerated Decision (the equivalent of a summary judgment ruling) on October 4, 2005, holding Martex liable for 125 violations of FIFRA. In addition, the ALJ held a five-day hearing as to the remaining counts, and thereafter found Martex liable for an additional 45 FIFRA violations. The ALJ assessed Martex a total penalty of $92,620 for the 170 FIFRA violations. Martex appealed this decision to the Environmental Appeals Board, which upheld the ALJ's liability findings in full, and granted the EPA's cross-appeal by recalculating the assessed penalty and raising it to $163,680.

Martex now appeals the Board's decision as to both liability and penalty. Martex raises four issues on appeal, none of which need detain us long.

## II. Discussion

Our review of the Board's conclusions is highly deferential. By statute, we will sustain the Board's order "if it is supported by substantial evidence when considered on the record as a whole." 7 U.S.C. § 136n(b). In addition, we will sustain the EPA's interpretation of its own regulations unless that interpretation is "arbitrary, capricious, or otherwise plainly impermissible." Pepperell Assocs. v. EPA, 246 F.3d 15, 22 (1st Cir. 2001) (internal quotation omitted). We also review the Board's penalty assessment with heightened deference. See Sultan Chemists, Inc. v. EPA, 281 F.3d 73, 83 (3d Cir. 2002); see also

-4-

<u>Butz</u> v. <u>Glover Livestock Comm'n Co.</u>, 411 U.S. 182, 185 (1973)("[W]here Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy, the relation of remedy to policy is peculiarly a matter for administrative competence.") (internal quotations omitted).

**a. Selective Prosecution Claim**

Martex first argues, as it did before the Board, that the EPA's enforcement action amounted to selective prosecution. However, Martex fails to flesh out the basis for this claim. As best we can tell, appellant would have us conclude that the EPA engaged in selective prosecution merely because, as Martex alleges, the EPA left "untouched the rest of Puerto Rico's agricultural community." This is not enough to support such a claim. As we unequivocally stated in a recent decision, "The essence of [a selective prosecution claim] is that a prosecutor has pursued a case for a constitutionally impermissible reason, such as the defendant's race, religion, or other characteristic cognizable under equal protection principles." <u>United States</u> v. <u>Lewis</u>, 517 F.3d 20, 25 (1st Cir. 2008). Martex fails to make even an allegation that the EPA used such a constitutionally impermissible ground as the basis of its prosecution. Therefore, Martex's claim in this regard is utterly without legal basis and necessarily fails.

**b. Full and Fair Opportunity**

Next, Martex asserts that it was deprived of a full and fair opportunity to present its case before the ALJ. While its argument in this regard is scattered and poorly defined, we endeavor to address Martex's concerns in an orderly fashion. The factual basis for this claim revolves around the exclusion of certain witnesses by the ALJ on relevancy grounds, the alleged discrepancy in Spanish-English translation between two documents presented at trial, and the service of process. The service of process claim was not raised below, and therefore is waived. Vineberg v. Bissonnette, 548 F.3d 50, 57-58 (1st Cir. 2008). The translation issue was also not raised below, and therefore suffers the same fate. Id.

As to the witness issue, the ALJ denied Martex's motion to depose four witnesses who Martex said would shed light on its theory of selective prosecution. Because the ALJ found that Martex had failed to make out an even rudimentary claim for selective prosecution, Martex's proposed witnesses were excluded. We find no fault with this conclusion. Martex also complains that it was unable to subpoena eight employees of the Puerto Rico Department of Agriculture and/or the Puerto Rico office of the EPA. The ALJ denied Martex's motion to subpoena these witness because FIFRA does not authorize the administrative tribunal to compel testimony at deposition or hearing. See, e.g., In re Chempace Corp., EPA Docket

-6-

No. 5-IFFRA-96-017, 1997 WL 881227 (order Denying Motions, Feb. 27, 1997). Again, we find no fault with this conclusion.

Thus, we find no basis for Martex's claim that it was unable to fully and fairly defend itself in this matter. We also note that Martex received a five-day administrative hearing, presented numerous pretrial and post-trial motions, fully briefed its appeal before the Board, and submitted an appendix numbering 657 pages to this court -- a testament to the thorough treatment this matter has received at all levels.

## c. Substantial Evidence Claim

Martex also contests the substantive findings of liability made below. The crux of Martex's argument in this regard is that its farms contain abundant sources of water, such as lakes, streams, and fruit washing facilities, which are sufficient to comply with the WPS standards. However, neither in its brief nor at oral argument did Martex allege that these water sources were grouped together with the required soap and paper towels, or that they were available within 1/4 mile of the work sites, as required by regulations. Indeed, substantial evidence in the record points to the opposite conclusion. We therefore see no basis for reversal as to the substantive violations.[4]

---

[4]We also reject as irrelevant Martex's assertion that it should not be held liable for violating the WPS because it allegedly has a general record of excellent safety performance, has made a genuine effort to reduce the use of pesticides, and has undertaken post-enforcement corrective measures.

**d. Penalty**

Finally, Martex contests the penalty imposed by the Board, calling it "exaggerated, totally unreasonable, disproportionate and not related whatsoever to the alleged FIFRA violations." We disagree. As a preliminary matter, we note that Martex did not seek reconsideration of the penalty before the Board, which it was entitled to do. See 40 C.F.R. § 22.32. Therefore, it is not clear that this claim was properly raised below. Regardless, because we afford great deference to the Board in determining penalties, see Sultan, 281 F.3d at 83, we deny Martex's claim of disproportionality. The maximum statutory fine for each violation of FIFRA committed by Martex is $1,100. The Board conducted a deliberate and rigorous evaluation of the proper penalty as to each violation, never assessed an amount greater than $1,100 for any violation, and in several cases assessed a much lower penalty. One of the factors it considered was Martex's ability to pay the proposed penalty. We therefore find no error. See Newell Recycling Co. v. EPA, 231 F.3d 204, 210 (5th Cir. 2000) ("[I]f the fine does not exceed the limits prescribed by the statute authorizing it, the fine does not violate the Eighth Amendment.").

### III. Conclusion

For the foregoing reasons, we **affirm** the decision below in full, as to both liability and penalty.