# United States Court of Appeals
## For the First Circuit

No. 13-1044

RAYMOND C. MCARDLE,

Plaintiff, Appellant

v.

TOWN OF DRACUT/DRACUT PUBLIC SCHOOLS, THERESA ROGERS,
W. SPENCER MULLIN, DR. STACY SCOTT,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Jeffrey R. Mazer, with whom Mazer Law Group, LLC, was on
brief, for appellant.
Thomas A. Mullen, for appellees.

October 9, 2013

**KAYATTA, Circuit Judge**. Appellant Raymond McArdle ("McArdle") is a former teacher in the public schools of the town of Dracut, Massachusetts. He claims, among other things, that Dracut improperly handled his request for leave under the Family and Medical Leave Act, 29 U.S.C. § 2612 ("FMLA") and forced him to resign in retaliation for seeking such leave. The district court granted summary judgment dismissing all of McArdle's claims, ruling that he had not worked enough to be eligible for FMLA leave, and otherwise finding his claims meritless. For the following reasons, we affirm.

## I. Background

Because the district court dismissed McArdle's claims on summary judgment before any factfinder could evaluate the competing evidence and inferences, we will describe the facts giving rise to this lawsuit in a light as favorable to McArdle as the record will reasonably allow. Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 327 (1st Cir. 2005).

McArdle began working as a middle school English teacher for Dracut in 1997. In 2007, he entered divorce proceedings with his wife and began drinking excessively. Depression, anxiety, foreclosure on his home, and personal bankruptcy followed. Reeling from these personal crises, McArdle began to miss work. He went to work at school only ten of twenty-one school days in September of 2008 and did not appear at all in October, November, or December of

-2-

2008.  After the winter break, his record improved temporarily.  He went to work fifteen out of seventeen days in January, fourteen out of fifteen days in February, twenty out of twenty-one days in March, twelve days out of sixteen in April, and eleven out of twenty days in May.  He did not work at school at all in June, the final month of the school year.  In total, he came to school for only eighty-two days in the 2008-2009 school year.

These absences exhausted the fifteen days of sick leave and the two days of personal leave to which he was entitled in the 2008-2009 year.  He then exercised, after some disagreement with his superintendent, a contractual right to use in the 2008-2009 school year his fifteen days of sick leave for the 2009-2010 year.  He also had fifty-two "deduct days" during which school was in session but he did not work and was not paid.  Throughout the 2008-2009 school year, McArdle provided cursory explanations for his absences, supplying his principal with two notes that indicated that he had a "medical condition" and was unable to work for "medical reasons."  He was disciplined--over his objection--for not attending faculty meetings when he was absent from work.  He was also disciplined for failing to leave lesson plans for a substitute with the vice-principal, even though he had done so.

On September 1st, the day the 2009-2010 school year began, McArdle again did not appear at school.  Instead, that day he called his principal, Defendant Theresa Rogers, and informed her

-3-

that, "at the very last minute," he had made the decision that it would not be in anyone's interest for him to come back to school. During the same conversation he also stated that he wanted to apply for FMLA leave. Rogers informed him that he would have to contact the Dracut superintendent, Defendant W. Spencer Mullin. When McArdle called Mullin's office, he spoke with Mullin's secretary, RayAnn L'Heureux, who agreed to send him "the appropriate paperwork for the FMLA." Two weeks later he received a United States Department of Labor fact-sheet about the FMLA and a form to be completed by his doctor. Included with these materials was a note, which McArdle concedes he read, informing him that he had to notify the superintendent in writing of any request for FMLA leave. This requirement was also stated clearly in Dracut's FMLA leave policy, which was posted on its website.

McArdle did not send any notice to the superintendent of his desire to take FMLA leave. Nor did he return a completed medical certification. McArdle testified that after he received the materials from Ms. L'Heureux he decided that he must need some additional form to fill out. He called the superintendent's office and spoke with Ms. Curtis, another of Superintendent Mullins's secretaries. In his first conversation with her, he asked that someone in the superintendent's office "send [him] what [he] need[ed] to fill out." McArdle called the superintendent's office five to seven more times requesting to speak to Mullins himself,

-4-

but never received a call back. McArdle decided that submitting the medical certification was "optional" and did not do so. He is correct that the school district's FMLA policies, which he read, state only that the district "may" require a medical certification from an employee seeking FMLA leave, but he does not explain why he did not believe that such a request had been made when L'Heureux sent him the certification form. And he completely ignores the fact that he had previously agreed in writing (as a condition to being allowed to return to work for Dracut in 2008) that he would "provide a physician's statement whenever sick leave prevails for five (5) consecutive school days."

On September 28, 2009, Rogers sent a letter to McArdle terminating him for abandoning his position "since we have not received any written correspondence from you nor have you called the substitute call-in service to alert the district that your classes would be unattended." McArdle promptly replied, pointing out that the town was required to first give him notice of intent to terminate his employment before actually firing him. McArdle's reply noted for the first time in writing his desire to take FMLA leave, explained that he believed he had not yet been sent the proper form to submit, and denied that there was any need to call the substitute call-in service because the principal knew he was out and had arranged for a long-term substitute. He still failed to provide any physician's statement as the town had plainly

required. Rogers sent a second letter on October 5, this one notifying McArdle of Dracut's intent to terminate (for the same reasons) and giving him ten days to respond. Nine days later, McArdle spoke with Rogers by telephone and resigned his position after Rogers told him that everything relating to his termination would be removed from his record if he did so.

McArdle filed this suit in 2011, alleging in Count I that all defendants violated his rights under the FMLA. Counts II and III alleged Massachusetts state law tort claims of, respectively, intentional infliction of emotional distress and intentional interference with advantageous business relations. Both counts were alleged against individual decision-makers in the Dracut schools (defendants Theresa Rogers, W. Spencer Mullin, who was the superintendent prior to and at the time of McArdle's dismissal, and Stacy Scott, who assumed Mullins's position after McArdle's termination). After discovery, defendants successfully moved for summary judgment on all of McArdle's claims. He now appeals.

## II. Standard of Review

"We review the district court's grant of summary judgment de novo." Ortiz-Bonilla v. Federación de Ajedrez de Puerto Rico, Inc., ___ F.3d ___, 12-1022, 2013 WL 4457427 (1st Cir. Aug. 21, 2013). "Summary judgment is appropriate when there is 'no genuine issue of material fact, and the moving party is entitled to

-6-

judgment as a matter of law.'" Id. (quoting Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir.2013)).

## III. Analysis

### A.   McArdle's FMLA Claims

The FMLA guarantees an eligible employee the right to take twelve weeks of unpaid leave because of, among other things, a serious medical condition that renders the employee unable to do his job. See 29 U.S.C. § 2612;[1] Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002). The Act further makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]." 29 U.S.C. § 2615(a)(1).

McArdle claims that Dracut violated the FMLA both by interfering with his attempt to seek permission to take FMLA leave, and by terminating him because he attempted to avail himself of the protections of the FMLA for the leave he took. In this rather unusual case, McArdle has not claimed that Dracut violated the FMLA by refusing to grant him FMLA leave, or by firing him for taking such leave. This departure from the more customary path followed by terminated, leave-taking employees might be explained by

---

[1] Section 2612(a)(1) provides, inter alia, that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

McArdle's recognition that, as we explain below, he was not eligible to take FMLA leave. But McArdle does in fact argue that he was eligible for FMLA leave.

Be that as it may, absent exceptional circumstances not present here, we endeavor to assess the claims a party makes, rather than to ponder why he makes those claims and not others. And, in the end, that assessment here will demonstrate that McArdle had no cause for complaint of any type under the FMLA.

## 1. McArdle Was Not Eligible To Take FMLA Leave

As a foundation on which he largely but not completely erected his claims, McArdle argued below, and now argues on appeal, that he was eligible for FMLA leave, or that the town should be estopped from denying that he was eligible. We therefore begin our analysis of the claims McArdle does make by explaining why the district court correctly ruled, as a matter of law, that McArdle was not eligible to take FMLA leave.

To be eligible for FMLA leave, an employee must have "at least 1,250 hours of service with [the employer] during the previous 12-month period." 29 U.S.C.A. § 2611(2)(A). The parties presume that the phrase "hours of service" means hours actually worked, and both the applicable regulations and case law support this presumption. See, e.g., 29 C.F.R. § 825.110(c)(1); Plumley v. S. Container, Inc., 303 F.3d 364, 372 (1st Cir. 2002). Under regulations promulgated by the Department of Labor, an employer of

a full-time teacher who challenges the FMLA eligibility of that teacher "must be able to clearly demonstrate . . . that . . . [the teacher] did not work 1,250 hours."  29 C.F.R. § 825.110(c)(3).

Dracut demonstrated that McArdle attended school for only eighty-two days in the twelve months preceding September 1st, 2009. McArdle nevertheless suggests that the number of days he worked is a disputed question of material fact because the record contains a letter from Dracut's superintendent to McArdle's counsel that calculates that McArdle worked 975 hours, based on a determination that he was paid for 130 days.  But the record demonstrates beyond dispute that the mere fact that a teacher is paid for a day does not mean that he worked that day.  McArdle, for example, took personal days, sick days and a paid leave of absence as well as, presumably, vacation days or paid holidays.  In any event, the actual books and records of the Dracut Public Schools showed that McArdle came to work on only 82 days, with an entry for each such day.  McArdle offered no testimony that he was present at work on any other days.

Estoppel aside, that leaves one question:  how many hours did McArdle work?  He testified that, when he actually came to school, he was typically in his classroom from 6:15 AM to 1:45 PM, a total of 7.5 hours.  The collective bargaining agreement to which he is subject also specifies a 7.5 hour workday.  7.5 hours times 82 days equals 615 hours worked.

Of course, proving that McArdle was in school only 615 hours is not the same as proving that he worked only 615 hours. As McArdle plausibly testified, in addition to time spent at school, he (like many teachers) sometimes worked at home "correct[ing] writing journals . . . issue[ing] and sign[ing] writing papers, term papers." Moreover, some of that work may have been done on days other than those when McArdle also went to school. A busy and conscientious teacher, for example, might grade papers or prepare for the next day's classes on a weekend.

Dracut, however, did not need to prove that McArdle worked only 615 hours. It's burden was only to clearly demonstrate that McArdle worked less than 1250 hours. The gap between 615 hours and 1250 hours is so large that it is entirely implausible on this record that McArdle worked anywhere close to 1250 hours. Cf. Donnelly v. Greenburgh Cent. Sch. Dist. No. 7, 691 F.3d 134, 142-44 (2d Cir. 2012) (1247 hours assumed under CBA close enough to 1250 hours to create factual issue that other, take-home work pushed total over 1250). McArdle's own description of what he might sometimes do at home falls far short of suggesting that a Dracut public school teacher's work at home is so substantial as to exceed his work at school. McArdle, moreover, was not working at school at all for two separate three month periods, each uninterrupted by any activity that might have generated take-home work. In sum, McArdle has "failed to present sufficient evidence to create a

-10-

genuine issue of fact as to the number of hours [he] actually worked during the twelve-month period preceding [his] request for leave."  Staunch v. Cont'l Airlines, Inc., 511 F.3d 625, 631 (6th Cir. 2008).

**2.    McArdle Has Not Established That The Town's Handling Of His FMLA Leave Application Caused Him Any Harm**

Unable to establish that Dracut in any way interfered with a right to take leave, McArdle is reduced to arguing that, even if he was not eligible for FMLA leave, Dracut nevertheless interfered with his FMLA rights by violating 29 C.F.R. § 825.300(b)(1), which provides that "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave . . . ."  It is not clear on the face of the notice regulations whether they require notice of ineligibility to a person who is ineligible.  Nor is it clear that McArdle's communications to Dracut were sufficient to trigger an obligation by Dracut to provide a "notice of eligibility" to McArdle when it had already sent him the medical certification form and a written notice that a written request was required to obtain FMLA leave.

We need not decide these issues because, even if we were to assume a violation of the notice requirements, Dracut would be liable only for "compensation and benefits lost by reason of the violation . . . or any other relief tailored to the harm suffered."

-11-

29 C.F.R. § 825.300(e). McArdle points to nothing that he could or would have done differently had Dracut told him in early September that he was not eligible for FMLA leave. To the contrary, the undisputed record is that, without advanced notice, he failed to show up for work.

McArdle offers no evidence that he would have been able to return to work had he known there was no FMLA leave for him. He claims that in the prior year, he always found a way to ensure that his absences were authorized or permitted, asking us to infer that he would have done so in the new school year as well if he knew that he had to do so. Speculation, however, does not suffice for reasonable inference. Even three years after the fact, McArdle offers no explanation for how he would have secured authorization for the leave he contends he had no choice but to take. Such leave would have been especially hard to obtain from a school that, by his own claim, was plainly unenthusiastic about accommodating his needs.

In short, nothing was lost, nor was any harm suffered, by reason of the alleged violations. Therefore, even assuming that Dracut should have sent McArdle a notice that he was ineligible for FMLA leave, no remedy could or need be tailored for such a harmless error. McArdle's claim that the town should be estopped from denying his ineligibility fails for this same reason, as he is only entitled to estoppel if he "relied on [Dracut's] misrepresentations

-12-

to its detriment."  Nagle v. Acton-Boxborough Reg'l Sch. Dist., 576 F.3d 1, 3 (1st Cir. 2009).

### 3.    Dracut Did Not Unlawfully Retaliate Against McArdle

In addition to granting workers important rights, the FMLA also precludes employers from retaliating against employees for exercising those rights.  Colburn v. Parker Hannafin/Nicholas Portland Div., 429 F.3d 325, 330-32 (1st Cir. 2005); Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 160-61 (1st Cir. 1998).  "To make out a prima facie case of retaliation [McArdle] must show (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action."  Id. at 161 (applying the standard from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to FMLA cases).

In the more typical case, an employee who is subject to an adverse employment decision after or while taking FMLA leave will claim that the taking of the leave was the cause of the adverse decision.  See, e.g., Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 283-84 (6th Cir. 2012).  Alternatively, when an employee takes no leave, but is subject to an adverse employment decision after asking to take FMLA leave, the employee will claim that the request was the cause of the adverse decision.  See, e.g., Mickelson v. New York Life Ins. Co., 460 F.3d 1304 (10th Cir.

2006).  Here, by contrast, we have an unusual case in which McArdle was fired while taking leave, but he does not argue that he was fired for taking leave, nor could he successfully so argue because, in his case, taking leave was not a "right protected under the FMLA."

McArdle is thus left with the rather contrived argument that he was fired not for taking the unsanctioned leave he took, but because he asked for FMLA leave.  This is another way of saying that he was fired, not because he was absent, but because he asked whether he had the right to be absent.  In support of this argument McArdle points to what he calls the temporal proximity between his oral request for leave and his receipt of a notice of intent to terminate, followed by actual constructive termination when he confirmed his request in writing.  He also points to what he argues are pretextual reasons given by the town for its decision.  Ultimately, he argues that inferences of improper motivation drawn from chronology and pretext precluded the grant of summary judgment.

As an initial matter, it is not clear that one not entitled to take FMLA leave "avails himself of a protected right" when requesting to take such leave.  The case law is both split and not fully developed regarding such an argument.  Compare Walker v. Elmore Cnty. Bd. of Educ., 379 F.3d 1249, 1253 (11th Cir. 2004) (holding that eligibility is a prerequisite for a retaliation

claim), with Johnson v. Dollar Gen., 880 F. Supp. 2d 967, 991 (N.D. Iowa 2012) (criticizing Walker); see also Wilkins v. Packerware Corp., 260 F. App'x 98, 102-103 (10th Cir. 2008) (surveying cases and describing the issue as "contestable").

We are not convinced that an employee who is ineligible for FMLA leave can never bring a retaliation claim. There are many reasons why an employee will not know until inquiring whether he is eligible for any particular right available under the Act. The statute prohibits employer interference with both the exercise of rights provided under the FMLA and "the attempt to exercise any [such] right." 29 U.S.C. § 2615(a)(1). There is no requirement that the attempt be successful. It would seem too, that firing an employee for asking would also frustrate the aims of the Act even if the inquiring employee turns out to be ineligible. Such an "ask at your peril" approach could deter employees, including eligible employees uncertain of the extent of their rights, from taking the first step necessary to exercise their rights.

In any event, in this case we need not decide whether an ineligible employee may never bring a retaliation claim under the FMLA if he is fired merely for asking if he is eligible. Here, the only reasonable reading of the record is that McArdle was not fired for asking to take FMLA leave. Rather, he was fired because the town concluded that his renewed and indefinite absence, without advance notice, allowed it to fire him.

-15-

The correctness of this conclusion is underscored by imagining that McArdle had made no request at all for FMLA leave. In such a scenario, the town's claim that he was abandoning his job without effectively establishing a right to do so would have been indisputably correct. He would have been terminated, perhaps sooner. Alternatively, imagine that McArdle had asked for FMLA leave while still showing up for work. There is no evidence to which he points that would support any inference that the town would have still fired him, or even thought that it could fire him under the terms of the collective bargaining agreement. In short, even assuming that he properly requested FMLA leave that request could not have caused his termination. His absence from work, on the other hand, was fully sufficient to cause his termination. Cf. Soto-Padro v. Pub. Bldgs. Auth., 675 F.3d 1, 6 (1st Cir. 2012) ("'if the lawful reason alone would have sufficed to justify the [action],' then the employee cannot prevail.") (quoting McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 359 (1995)). This conclusion "comports with the traditional tort-law principle that if the wrongful act did not cause the injury, the wrongdoer is not liable." Tejada-Batista v. Morales, 424 F.3d 97, 101 (1st Cir. 2005).

Based on the foregoing, no reasonable factfinder could find that the request for leave played any role in causing the town to fire McArdle. Indeed, to all appearances, the request for the

leave may have delayed the termination, hence the town's desire (so McArdle claims) to be able to contend that he was not properly asking for leave.[2]

## B.    McArdle's State Law Claims

McArdle's state law claims against the individual defendants are entirely without merit.  The recklessness with which McArdle has lodged and pursued damage claims, including punitive damage claims, against individuals who did nothing wrong, is highlighted by (but not limited to) his claim against Scott.  Scott became superintendent only after McArdle was terminated.  McArdle made no factual allegations about her conduct except that, fourteen months after his termination, she replied to correspondence from his attorney with a letter taking the plainly correct position that he was ineligible for FMLA leave.  McArdle's brief does not even attempt to argue that Scott's conduct was tortious, yet he inexplicably appeals the district court's grant of summary judgment in her favor on the state law claims.

His claim for intentional infliction of emotional distress against the remaining defendants fails even to get to first base because Massachusetts workers' compensation law bars the

---

[2] It is not apparent why McArdle claims that the town was untruthful in expressing its view that he had not pursued in writing a request for leave.  McArdle had agreed to provide a doctor's note when taking leaves of five or more days and did not do so despite receiving a medical certification form from the town in September of 2009 when he expressed interest in FMLA leave.

use of that tort by an employee (or former employee) against coworkers or employers acting within the scope of their employment. Mass. Gen. Laws Ann. ch. 152, § 24; Foley v. Polaroid Corp., 381 Mass. 545, 549-50 (1980). An employee's action is within the scope of his employment when it "is of the kind he is employed to perform . . .; if it occurs substantially within the authorized time and space limits . . .; and if it is motivated, at least in part, by a purpose to serve the employer . . . ." Doe v. Purity Supreme, Inc., 422 Mass. 563, 568 (1996) (internal quotation marks omitted). McArdle points to no evidence that the individual defendants were not motivated even in part by a desire to serve their employer, Dracut, by terminating an employee who was not performing the work for which he was being paid.

Finally, McArdle's claim for intentional interference with advantageous business relations fails because McArdle provided no evidence of actual malice, which is required for an employee to prevail against an employer on that tort. Blackstone v. Cashman, 448 Mass. 255, 260 (2007). Moreover, McArdle's only argument in support of his appeal on this claim relies on the same theory as his FMLA retaliation claim and so fails for the same reason that claim does.

### IV. Conclusion

For the foregoing reasons the judgment of the district court is affirmed.

So ordered.

-18-