# United States Court of Appeals
## For the First Circuit

No. 13-1438

JOSEPH TRAVERS,

Plaintiff, Appellant,

v.

FLIGHT SERVICES & SYSTEMS, INC.,

Defendant, Appellee.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]


Before

Lynch, Chief Judge,
Thompson and Kayatta, Circuit Judges.


Brant Casavant, with whom Shannon Liss-Riordan and
Lichten & Liss-Riordan, P.C. were on brief, for appellant.
Christopher M. Pardo, with whom Jeffery M. Rosin and
Constangy, Brooks, & Smith LLP were on brief, for appellee.


December 12, 2013

**KAYATTA, Circuit Judge**. Appellee Flight Services fired Appellant Joseph Travers as he pursued a lawsuit against the company under the Fair Labor Standards Act ("FLSA"). Flight Services says it terminated Travers for violating company policy. Travers says he was fired in retaliation for his FLSA lawsuit. Because a reasonable jury could return a verdict for Travers without relying on improbable inferences or unsupported speculation, we vacate the district court's grant of summary judgment to the company.

## I. Background

The district court granted judgment to Flight Services before any factfinder could evaluate the competing evidence and inferences. We therefore describe the facts giving rise to this lawsuit in a light as favorable to Travers as the record will reasonably allow, without implying that the following is what actually occurred. McArdle v. Town of Dracut, 732 F.3d 29, 30 (1st Cir. 2013).

Travers began work in 2004 as a skycap employed by Flight Services, a company that provides services to airlines, including JetBlue. In April 2008, Travers filed a lawsuit against JetBlue. Roughly a year later, he amended the complaint to include Flight Services as a defendant. As amended, the complaint brought five claims on behalf of Travers and ten other plaintiffs, representing a putative class of skypcaps. Count I of the complaint charged

-2-

JetBlue and Flight Services with violating the FLSA by failing to pay the federal minimum wage.

By all accounts, Travers acted as the leader among the plaintiffs, encouraging others to join the suit, coordinating with counsel on behalf of the plaintiffs, and serving as the first named plaintiff on the complaint. According to Travers's former supervisor Robert Nichols, after Travers filed the suit, Flight Services CEO Robert Weitzel, Sr., repeatedly yelled at Nichols to "get rid of [Travers]" and "talk [Travers] into dropping the lawsuit." Weitzel complained specifically about how much money the suit was costing the company. Weitzel made these statements on telephone conferences in which his son, the president of Flight Services, also participated. Nichols, in turn, told Travers to "be careful" because "the company would be coming after" him. Flight Services fired Nichols in April 2010. The record does not reveal the reasons for Nichols's termination, and no party has claimed that the termination is relevant to this case. Weitzel continued to serve as CEO.

By September 2010, Travers and Flight Services were awaiting decisions on Travers's motion to certify conditionally an opt-in class under the FLSA, and on Flight Services' motion for summary judgment. Meanwhile, on September 3, 2010, Flight Services received a complaint about Travers from a JetBlue passenger, who said that Travers had solicited a tip. Flight Services' employee

handbook bars solicitation of tips, classifying it as grounds for termination:

> Solicitation of tips shall not be condoned.   This includes any form of solicitation to include but not limited to -- advising passengers of the amount of the tip that they must give to the employee for the service provided, refusing to provide service without first receiving a tip, selling weight, etc.  Employee who are [sic] found to have solicited tips will be terminated immediately[.]

The passenger complained about Travers to a JetBlue supervisor, whose report indicated that the passenger was "extremely upset" and felt "bullied."  At the supervisor's request, the passenger wrote a statement describing the incident:

> The baggage man informed me that a tip is required just as you would tip in a restaurant.  He said this is his lively hood [sic].  When I only tipped $1 he got angrier [and] said he was sorry I didn't like the service.  He walked away, told someone he was going on break & slammed the door.  I felt like [he] was hussling [sic] people.

Later that day, Flight Services suspended Travers pending investigation of the complaint and asked him to write a statement describing his interaction with the passenger.  Travers's account read as follows:

> I do Recall Customer, Whe[n] She Arrived At Podium I Requested I.D. and How many Bags[.]  Proceeded To Check in Customer[.]  Informed her of $2.00 fee Adv Customer fee was JetBlue and Tip was not included, Cust got upset and stated she didn't have To Tip, I responded tip was optional Just Like Restaurant and I Apoligize [sic] If she Didn't Like The Service.  I Then went on Break.

Three and a half weeks later, on September 27, 2010, Lisa Varotsis, a general manager at Flight Services, fired Travers.

Varotsis had recommended Travers's firing to Flight Services' director of human resources, who approved it. According to Travers, Varotsis gave just one reason for his termination: tip solicitation.

Travers filed his retaliation suit in January 2011. After discovery, the district court granted summary judgment to Flight Services.

## II. Standard of Review

We review de novo the district court's grant of summary judgment. McArdle v. Town of Dracut, 732 F.3d 29, 32 (1st Cir. 2013). Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this case, as in many others, deciding whether a factual dispute is "genuine" poses the most difficult challenge. We label a dispute genuine if "a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party. . . . Conclusory allegations, improbable inferences, and unsupported speculation, are insufficient to establish a genuine dispute of fact." Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (internal citations, quotation marks, and alterations omitted).

### III. Analysis

Indisputably, Travers's evidence would enable a reasonable jury to conclude that Flight Services CEO Weitzel wanted to fire Travers because of the FLSA lawsuit. Nevertheless, Flight Services argues that the evidence concerning the circumstances of Travers's firing would not allow a reasonable jury to find a causal connection between Weitzel's retaliatory animus and that firing.

In support of its argument, Flight Services points, first, to the lack of any direct evidence that Weitzel had a role in the decision to fire Travers or that those who made the decision (Varotsis and the human resources director) were even aware of Weitzel's views. Flight Services correctly describes the evidence: the record contains no testimony or document chronicling any communication regarding Travers between Weitzel or Nichols and those who made the decision to fire Travers. In many cases, the lack of such direct evidence linking the person expressing animus to the allegedly retaliatory act would create a fatal gap in proof that could not be bridged except through implausible inference or unsupported surmise. See, e.g., Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 41 (1st Cir. 2013); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990); Gray v. New Eng. Tel. & Tel. Co., 792 F.2d 251, 255 (1st Cir. 1986).

Here, though, the retaliatory animus resided at the apex of the organizational hierarchy. It repeatedly took the form of

express directives to Travers's supervisor, Nichols, in the presence of another senior manager, Weitzel's son. A rational juror could conclude that such strongly held and repeatedly voiced wishes of the king, so to speak, likely became well known to those courtiers who might rid him of a bothersome underling. See Freeman v. Package Mach. Co., 865 F.2d 1331, 1342 (1st Cir. 1988) (observing in a discrimination case that "[t]he battle plan of the admiral is a valid datum in assessing the intentions of the captain . . . .").

A CEO sets the tone and mission for his subordinates, many of whom presumably consider it an important part of their jobs to figure out and deliver what the CEO wants. This CEO, we must assume, bristled so fiercely that he expressly and repeatedly demanded that Travers be fired. Weitzel's instructions qualitatively differ from the less probative remarks found unable to carry the plaintiff's burden in other cases. They are neither "stray," see Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001), nor ambiguous, see Gonzalez v. El Dia, Inc., 304 F.3d 63, 70 (1st Cir. 2002), nor stale, see Alvarado-Santos v. Dep't Of Health, 619 F.3d 126, 133 & n.5 (1st Cir. 2010). They hone in on a specific employee, direct the precise action taken, and flow from a source with the formal authority to enforce compliance. On such a record, it is neither irrational nor unfair to infer--if a jury is so inclined--that knowledge of Weitzel's

directive spread to other managers, themselves likely reluctant to frustrate the CEO's objective. After all, if Weitzel would unabashedly and repeatedly voice such sentiments to Nichols, then why not to Nichols's replacement, Varotsis, or to the director of human resources, who approved the firing? No compelling evidence shows that Weitzel's ire, or the cause for that ire, abated. And the fact that Varotsis has not directly denied awareness of Weitzel's unhappiness with Travers adds further grist for such a line of thinking.

Flight Services next argues that Travers cannot show a causal link between retaliatory animus (no matter how widespread) and his discharge because he committed an offense that would have resulted in his termination anyway. The parties agree that the applicable standard requires "but-for" causation.[1] Flight Services is therefore correct that Travers's claim would fail if Flight Services would have fired him absent retaliatory animus. See Kearney v. Town of Wareham, 316 F.3d 18, 24 (1st Cir. 2002). And Flight Services also correctly reasons that the evidence here would allow a reasonable jury to conclude that Flight Services would have

---

[1] Because the parties agree, we need not determine the precise standard of causation applicable to this case. We note, however, that the Supreme Court has required "but-for" causation under the similarly-worded anti-retaliation provision of Title VII of the Civil Rights Act of 1964, rejecting the "motivating factor" test applied by the lower court in that case. Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

fired Travers for soliciting tips even if he had never filed the FLSA lawsuit.[2]  On review of the entry of summary judgment for Flight Services, however, the question is not whether a reasonable jury could find that Flight Services would have fired Travers even in the absence of retaliatory intent.  Rather, the question pertinent to our review of summary judgment is whether no reasonable jury could find otherwise.

We conclude that the evidence in this case would not so limit the range of the jury's findings.  On the facts viewed favorably to Travers, it remains plausible that the pre-existing retaliatory motive tipped the scales when the company decided whether Travers had violated company policy in a way that required his termination.  According to the statement Travers wrote on the day of the passenger's complaint, he told the passenger that a tip was "optional just like [at a] restaurant."  Flight Services itself posts a sign at the skycap stand similarly stating, "tipping is optional but greatly appreciated," and Flight Services admittedly allows its skycaps to tell customers directly that "tips are not required but are appreciated."  The company's policy, by comparison, does not define "tip solicitation" but includes only

---

[2]  Flight Services also claims other non-retaliatory justifications for Travers's firing.  The other justifications, however, find no provenance in any writing created prior to this litigation, were not mentioned at all when Varotsis told Travers why the termination was justified, and otherwise lack attributes that would compel a jury to accept them as true.

three examples, all of which are significantly more extreme than the conduct Travers has admitted: "advising passengers of the amount of the tip that they must give to the employee," "refusing to provide service without first receiving a tip," and "selling weight." Plausibly, then, Travers's conduct, while perhaps edging beyond what was expressly permitted, did not indisputably cross into what was clearly prohibited.

Flight Services counters that it does not matter whether Travers himself admitted to conduct that made termination certain. Rather, as long as an aggrieved customer made a first-hand complaint, "termination is essentially assured." This argument, though, runs aground on the testimony of Flight Services' own director of human resources. She said that Flight Services actually considers the statements of both the employee and the passenger, and then terminates the employee when it "feel[s] that it was, indeed, solicitation . . . ." Similarly, the written policy calls for termination not when solicitation is alleged, but when it is "found." In short, Flight Services' evaluation of accusations left room for judgment and discretion.

Nor does the record show that Flight Services terminated every employee accused of tip solicitation. Travers's former supervisor, Nichols, related an occasion when he had an employee transferred, not fired, for "bugging passengers for tips." Although Flight Services disputes this testimony, if believed by a

jury it would point in the direction of a finding that Travers might well have been spared had he done only what he admitted doing, but for a desire to get rid of him. See Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003) (holding that "[e]vidence of discriminatory or disparate treatment," such as evidence that other employees were not disciplined for engaging in the same conduct as the plaintiff, can be sufficient to show retaliation).

At least one of Travers's coworkers, Jing Wei, was also accused by an apparently unbiased third party of soliciting tips, yet remains employed. Flight Services argues that its retention of Wei actually disproves Travers's case because Wei also participated in Travers's wage lawsuit and was not fired. But Travers, not Wei, acted as the organizing force behind the suit and found himself in the CEO's crosshairs.

Additionally, Flight Services argues that one can draw no reasonable inference favorable to Travers from Wei's survival because the case against Wei was weaker than that against Travers and was insufficient to warrant termination. The two cases must be distinguished, says Flight Services, because the complaint against Wei came from a passenger's daughter, who did not claim to have witnessed the incident, while the complaint against Travers came from the affected passenger herself. While this difference plausibly explains why Flight Services fired Travers and not Wei,

-11-

a rational jury could also conclude on this record that the first-hand/second-hand distinction served merely as a post-hoc justification for disparate treatment. Importantly, Flight Services has produced no compelling evidence that it recognized such a distinction before tendering it as an explanation in this lawsuit.

The other proposed distinctions between Wei and Travers are similarly open to question. In its brief, Flight Services says that it was unable to confirm the allegation against Wei, but the record contains nothing to show that the company made any effort to do so. Flight Services also argues that Travers, unlike Wei, harassed Varotsis during her investigation of the complaint against him. But Flight Services failed to mention this distinction in explaining why Travers and Wei were treated differently in the statement of material facts submitted to the district court with its summary judgment motion, and presents no contemporaneous evidence to support it. Moreover, Travers denies it.

Besides attempting to distinguish Wei's situation from that of Travers, Flight Services also provides evidence that five other employees were fired for tip solicitation between 2008 and 2011. It is true that these five instances comport with Flight Services' proffered distinction between first-hand and second-hand complaints: in each case, Flight Services fired the employee after receiving a first-hand complaint against him. In four of the five

instances, however, the employee engaged in conduct going well beyond what Travers admitted to. One threatened to abandon a passenger in a wheelchair unless he received a tip; a second attempted to rob a customer; a third brought a wheelchair-bound passenger to an ATM, demanded a tip, then dropped the passenger's luggage and pushed the passenger into a cart; and the fourth expressly demanded a tip of at least twenty dollars. The fact that Flight Services fired these employees for such conduct does not mean that it would have fired Travers for materially less egregious conduct (assuming his account had been believed). Only the fifth example lacks such additional elements pointing to a flagrant violation of company policy, but the termination there occurred almost one year after Travers filed this suit, greatly reducing the persuasive force of the example.

In so reasoning, we offer an important note of caution. In subjecting to considerable scrutiny Flight Services' comparison of its treatment of Travers to its treatment of other employees accused of tip solicitation, we do not suggest that this evidence paints a sufficiently clear picture of disparate treatment among employees to provide support for an inference of retaliation. We hold only that the evidence is not so clear as to place beyond reasonable challenge the assertion that Flight Services would have fired Travers even had its CEO not been intent on doing so because of Travers's FLSA lawsuit.

## IV. Conclusion

For the foregoing reasons, as the record now stands, there remains a genuine dispute as to whether the people who decided to fire Travers acted with awareness of the CEO's desire to retaliate and, if so, whether Travers would have been fired anyway for reasons other than pursuit of his rights under the FLSA. We therefore <u>vacate</u> the district court's grant of summary judgment to Flight Services, and we <u>remand</u> to the district court for further proceedings consistent with this opinion. We award no costs.

<u>So ordered</u>.